## NEW YORK SUPERIOR COURT.

JOSEPH BURNETT and WILLIAM OTIS EDMONDS agt. EDWARD PHALON and HENRY L. PHALON.

An *exception* to the exclusion of an offer to prove a loss of damages by reason of the defendants' infringement of a trade mark, coupled with the condition that the witness (party plaintiff,) would not disclose the ingredients of the manufactured article containing the trade mark, cannot be sustained, where the court have previously decided that if the plaintiff claimed damages by reason of a loss of profits he must if required, state the ingredients of his compound, although he was not compelled so to do.

The expenses of obtaining an *injunction* cannot be embraced within the range of damages for the infringement of a trade-mark.

*General Term, March,* 1861. *Before all the justices.*

THIS is a trade-mark case in which the plaintiffs obtained an injunction restraining the defendants from using the word Cocoine, on the ground that it was an infringement of the plaintiffs' alleged right to the exclusive use of the word Cocoaine, as the name of an article of hair-oil.

Upon the first reference of the claim for damages the plaintiff was sworn as to his loss of profits, but upon cross-examination he refused to disclose the ingredients of Cocoaine. Upon exceptions to the referee's report the court sent the case back to the referee, and decided that if the plaintiff claimed damages by reason of a loss of profits, he must state the ingredients of his compound, even though

it was a secret of great value, as claimed by him. On the next hearing before the referee, the plaintiff offered proof of a loss of profits by reason of Phalon's use of the word Cocoine, but coupled the offer with the condition that he would not disclose the ingredients of Cocoaine. The referee rejected the offer, and upon all the evidence allowed the plaintiffs six cents damages. To this decision the plaintiffs excepted, and Justice HOFFMAN, at special term, sustained the report. The plaintiffs then appealed to the general term.

JOHN SHERWOOD, *for appellants*.
E. W. DODGE, *for respondents*.

By the court, MONCRIEF, Justice. But two of the exceptions taken upon the reference and to the report of the referee, were argued by the counsel for the appellants, and the others are plainly untenable, and were properly overruled.

The first of those two, marked twelfth exception in my opinion should not be sustained. The facts will not warrant an exception. This court has held that one of the plaintiffs offering himself as a witness, and testifying on behalf of the plaintiffs, and having been asked and answered on his direct examination the question, " What profits have been realized by your firm on each dozen of the article sold ?" was bound upon the cross-examination to have answered the question, " In making up your estimate of profits as you have given, what materials do you calculate the cost upon ?" The counsel for the plaintiffs has not seen fit to ask the question formally put, and the counsel for the defendants therefore has had no opportunity to invoke the previous ruling of this court by repeating the question then refused to be answered. We cannot assume that the question would again be put to the witness, or that the circumstances attendant thereat would produce the former result. It

cannot be assumed that the witness, if asked, would not have answered the question. If the plaintiffs' counsel desired to test the soundness of the rule requiring an answer, the plaintiff should have presented himself in a position similar to that he occupied upon his previous examination, and awaited such order or direction as the referee or the court might make in the premises.

The other and only remaining exception arises upon the refusal of the referee to allow the question, " What expenses have you necessarily incurred for counsel fees in obtaining the injunction?" It is difficult to see upon what principle the expenses attending the obtaining of an injunction could be embraced within the range of damages for the infringement of the rights of plaintiffs. The injunction must have been sought for and granted in furtherance and pursuit of protection of the rights of the plaintiffs, and to prevent the continuance of the acts of the defendants. Under the system existing previous to the Code, it was usual to require the plaintiff to test his legal title to the right claimed by an action at law before an injunction would be granted. The action for an injury similar to that complained of by these plaintiffs, would have been trespass on the case, and claiming to recover damages for the loss or prejudice sustained by the defendants' unlawful or fraudulent act. The plaintiff, upon proof of his cause of action, was entitled to recover nominal damages, although he did not show that he had been deprived of any particular amount of profits by means of the defendant's fraud. The plaintiff could also apply to a court of equity to restrain the defendant from continuing the fraud; and the practice generally followed was to let the motion stand over until the legal title was determined, and directed the defendant in the meantime to keep an account of the sales, transactions, &c., made by him. (*Cornin* agt. *Daly, MSS.,* 1860; 3 *Vesey R.,* 140.) It is said in 3 *M. and Cr. R.,* 428, that " in consequence of the difficulty of making out a decree of taking an

account of profits, such an account is rarely taken." The application for an injunction is a motion, (*Code*, § 401; 5 *Abb. Pr. R.*, 252.) Costs of a motion are in the discretion of the court. (§ 315.) Costs of the application for an injunction were allowed in *Knott* agt. *Morgan*, (2 *Kern. R.*, 213.) If no costs are allowed in the order none can be given. (3 *Code R.*, 27; 4 *How. R.*, 164.)

It appearing that none of the exceptions can be sustained, they were properly overruled, and the report confirmed.

The order at special term was correct, and must be affirmed, with costs.